UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

BRUCE FRIEDRICH, et al.     PLAINTIFFS

v.     CIVIL ACTION NO. 3:04CV-741-S

SOUTHEAST CHRISTIAN CHURCH OF JEFFERSON COUNTY, et al.     DEFENDANTS

### MEMORANDUM OPINION

This matter is before the court on motions of the defendants, Louisville Metro police officers Herman Harris, Melissa Mottley, Darren Utsey, and Eric Johnson, for dismissal of the claims against them pursuant to Fed.R.Civ.P. 12(b)(6)(DNs 8, 13, 14).

When a motion to dismiss is made, the court must take the allegations of the complaint as true and grant dismissal only when it is beyond doubt that the plaintiffs can prove no set of facts entitling them to relief. *Conley v. Gibson*, 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957).

On Christmas Eve, December 24, 2003, the plaintiffs, a group of activists associated with People for Ethical Treatment of Animals ("PETA"), went to the vicinity of 920 Blankenbaker Parkway, the site of Southeast Christian Church, to demonstrate against the alleged abuse of chickens by Kentucky Fried Chicken, a division of Yum! Brands, Inc. Two of Yum! Brands' executives were believed to be members of the church. The activists hoped that a Christmas Eve protest at the church would encourage the Yum! executives and the Southeast parishioners to seek more humane treatment of chickens by KFC and its suppliers.

Shortly before noon on December 24th, four of the five activists, Alka Chandna, Kyle Hall, Eugene Hall, and Steven Jay Gross, took up a position on the sidewalk on the west side of

Blankenbaker Parkway for their demonstration. The fifth member of the group, Bruce Friedrich, went to park the rental car. The four activists were approached by Louisville Metro police officers and told that they could not demonstrate at their chosen location, but had to move across the street to the east side of Blankenbaker Parkway. When the plaintiffs said that they believed that they had a right to protest on the west sidewalk, they were told by police that they would be arrested if they did not move to the east side of the roadway. Chandna, Hall, Hall and Gross complied with the officers' instructions and protested unimpeded by police for the rest of the day.

After parking the rental car, Friedrich returned to the site to discover his compatriots on the east side of the roadway. After learning that the activists were required to move from their chosen location, Friedrich crossed to the west side of Blankenbaker Parkway. He was told that he would be arrested if he did not return to the east side of the roadway. When Friedrich attempted to write down the name and badge number of one of the police officers, he was arrested, handcuffed, and held at the site for in excess of one hour. Friedrich was cited for disorderly conduct in violation of KRS 525.060 and with blocking a sidewalk in violation of § 94.03 of the Louisville Code. Upon his release, Friedrich returned to the east side of the roadway and continued the demonstration with the other members of the group. The charges against Friedrich were later dismissed.

The five activists filed this action concerning the events of the night of December 24, 2003, asserting eleven causes of action:

| | |
|---|---|
| Count I: | Suppression of Free Speech |
| Count II: | Establishment of Religion |
| Count III: | Unreasonable Seizure |
| Count IV: | Malicious Prosecution |
| Count V: | Conspiracy to Violate Civil Rights |
| Count VI: | Municipal Liability |
| Count VII: | State Law Negligence |
| Count VIII: | State Law Assault and Battery |

    Count IX:        State Law False Imprisonment
    Count X:        State Law Malicious Prosecution
    Count XI:        State Law Punitive Damages

The defendants have moved for dismissal of all but Count IV of the complaint. The court will address the arguments *seriatim*.

A.

Count I of the complaint alleges suppression of the plaintiffs' free speech. The plaintiffs contend that they had a right to demonstrate on the sidewalk on the west side of Blankenbaker Parkway adjacent to the church. They contend that the defendant officers violated their civil rights by threatening Chandna, Hall, Hall, and Gross with arrest if they did not relocate to the east side of the roadway and by actually arresting Friedrich when he challenged the directive that they move.

The parties do not dispute that sidewalks are a traditional public forum for speech. *United States v. Grace*, 461 U.S. 171, 103 S.Ct. 1702, 75 L.Ed. 2d 736 (1983); *Parks v. City of Columbus*, 395 F.3d 643 (6th Cir. 2005). The defendants assert, however, that the harm caused by their removal of the activists from the west to the east side of the roadway constituted *de minimus* harm to the them and therefore their claim of impairment of their constitutional rights should not be recognized in this instance. The defendants have not provided the court with a case on point. Rather they cite a number of cases in which certain interferences were found to be of *de minimis* or inconsequential, but which are wholly inapposite on their facts. We do not conclude herein that an interference with speech such as occurred herein could never result in *de minimus* harm as a matter of law. However, we must deny the motion to dismiss on the ground that no yardstick, either factual or legal, exists in this case by which the court can measure the harm caused by the relocation of the plaintiffs' forum. The court concludes that the suggestion of the defendants that since the plaintiffs were still

- 3 -

permitted to express their message from across the street they suffered no cognizable harm is too simplistic an analysis. As this matter is before us on a motion to dismiss for failure to state a claim, we must accept the plaintiffs' allegations as true and deny the defendants' motion as to Count I.

B.

Count II claiming that the acts of the defendants in relocating the protesters on Christmas Eve constituted an unconstitutional establishment of religion under 42 U.S.C. § 1983 must be dismissed as to all of the defendants. "The Establishment Clause, at the very least, prohibits government from appearing to take a position on questions of religious beliefs or from 'making adherence to a religion relevant in any way to a person's standing in the political community." *County of Allegheny v. American Civil Liberties Union*, 492 U.S. 573, 594, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989)(*quoting, Lynch v. Donnelly*, 465 U.S. 668, 104 S.Ct. 1355, 79. L.Ed.2d 604 (1984)). The test for whether a particular government action violates the Establishment Clause was set forth in *Lemon v. Kurtzman*, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). The court must consider whether the action has a secular purpose, whether its principal or primary effect neither advances nor inhibits religion, and whether it fosters an excessive governmental entanglement with religion. *Lemon*, 91 S.Ct. at 612-13; *Adland v. Russ*, 307 F.3d 471, 479 (6th Cir. 2002).

In this instance, the only connection to religion suggested in the complaint is that the activists' chosen forum was a sidewalk in front of a church. The plaintiffs cite no authority for the proposition that the police officers' relocation of the activists from that sidewalk suggests endorsement of religion by the City of Louisville. Further, the fact that Southeast was allegedly displeased with the activists' presence on the sidewalk on Christmas Eve has not been alleged to

have had any connection whatsoever to religion. This court is unwilling to find that the police "touched upon religion" by requiring the activists to move on Christmas Eve from a sidewalk adjacent to a church to a sidewalk across the street. Count II will therefore be dismissed.

C.

Count III must be dismissed to the extent that it alleges that the officers unreasonably seized plaintiffs Chandna, Hall, Hall and Gross when they told them that if they did not leave the west side of the roadway they would be arrested.

The Fourth Amendment protects the right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.

> We adhere to the view that a person is "seized" only when, by means of physical force or a show of authority, his freedom of movement is restrained. Only when such restraint is imposed is there any foundation whatsoever for invoking constitutional safeguards. The purpose of the Fourth Amendment is not to eliminate all contact between the police and the citizenry, but "to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals." [citation omitted]. As long as the person [with whom the police have contact] remains free to...walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification.

*United States v. Mendenhall*, 446 U.S. 544, 553-54, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980). In this case, the police officers invited the activists to leave. Chandna, Hall, Hall, and Gross did just that, so as to avoid being seized. They were at all times free to leave, but chose to remain and protest on the east side of the roadway. They did so unimpeded by the police. The cases cited by plaintiffs involving arrests are inapposite, as there was no restraint of the activists' liberty. Count III as asserted by Chandna, Hall, Hall, and Gross must be dismissed as to all defendants.

Dismissal of Count III as asserted by Friedrich will be denied inasmuch as he contends that his arrest and detention were without probable cause and in retaliation for his exercise of his

constitutional rights. The complaint alleges that Johnson and Utsey effected the arrest, detention, and prosecution of Friedrich. There are no allegations that Harris or Mottley played any part in Friedrich's arrest or detention. Count III will therefore be dismissed as to Harris and Mottley in its entirety.

D.

Count V alleging conspiracy to violate the plaintiffs' civil rights must be dismissed as against all defendants. The plaintiffs' claim is based upon the alleged violation of 42 U.S.C. § 1985. The complaint states nothing more than the conclusory statement that the defendants conspired to deprive the plaintiffs of their civil rights, and intended by their actions to promote the church and to discourage free expression. These allegations fail to satisfy even the notice pleading standard of Fed.R.Civ.P. 8(a) as it fails to allege an agreement or any class-based animus.

Further, the court finds questionable the viability of a claim by animal rights activists under § 1985 in light of the acknowledgment of the Sixth Circuit Court of Appeals in *Warner v. Greenebaum, Doll & McDonald*, 104 Fed.Appx. 493 (6th Cir. 2004)(unpubl.) that, despite the holding in *Cameron v. Brock*, 473 F.2d 608 (6th Cir. 1973), it has not been read expansively. The court stated in *Volunteer Medical Clinic, Inc. v. Operation Rescue*, 948 F.2d 218, 224 (6th Cir. 1991) that "this court has interpreted § 1985(3) to hold that 'the class of individuals protected by the "equal protection of the laws" language of [§ 1985(3)] are those so-called "discrete and insular" minorities that receive special protection under the Equal Protection Clause because of inherent personal characteristics.'" *Cameron, supra.* held only that "clearly defined classes, such as supporters of a political candidate, fall under the protection of § 1985. The holding has not been extended to groups such as the activists herein. *See, Warner, supra.*

Count V of the complaint will be dismissed.

E.

Count VI claims municipal liability for the acts of the police officers. The complaint alleges that "Defendant Louisville Metro, by failing to train its police officers, and by failing to develop appropriate policies and procedures concerning constitutionally protected demonstrations, was deliberately indifferent to the federal and state constitutional rights implicated herein, and such deliberate indifference was the proximate cause of the constitutional violations set forth in Counts I-V." Complaint, ¶ 63.

While the complaint must contain more than bare assertions of legal conclusions, *Trulock v. Freeh*, 275 F.3d 391, 405, n. 9 (4th Cir 2001), we find that the motion to dismiss must be denied as to this count. The defendant officers have not moved to dismiss Count IV which alleges a § 1983 retaliation claim against Friedrich for exercising his constitutional rights. It is alleged that he was maliciously prosecuted to punish him and to discourage similar constitutionally protected activity by others. Count VI claims municipal liability for failing to train the officers and provide appropriate policies and procedures concerning demonstrations. The court concludes that, while thin, Count VI states a claim sufficient to survive dismissal under Fed.R.Civ.P. 12(b)(6). *See ie., Moreno v. Metropolitan General Hospital*, 210 F.3d 372 (6th Cir. 2000)(unpubl.)

F.

Count VII alleges that the officers were negligent in failing to "understand the law, including constitutional rights of all people," in initiating prosecution of Friedrich without probable cause, and in failing to advise Friedrich of the specific offenses with which he was being charged when he was taken into custody. Complaint, ¶¶ 66, 67, 68. The plaintiffs have cited no authority to establish that

any of these acts constitute actionable negligence against a police officer under Kentucky law. Count VII will be dismissed.

G.

Counts VIII (Assault and Battery), IX (False Imprisonment), and X (Malicious Prosecution) asserting violations of Kentucky law must be dismissed to the extent that they are asserted by Chandna, Hall, Hall, and Gross. The officers' statement to these plaintiffs that failing to move to the east side of the street would result in arrest simply does not constitute an assault under Kentucky law.

The claims of false imprisonment and assault and battery relate only to the detention and arrest of Friedrich. As Harris and Mottley are not alleged to have played any role in the arrest or detention (see Section C herein), Count VIII and Count IX will be dismissed as against them in their entirety. With respect to the claim of malicious prosecution, however, the complaint alleges that Harris and Mottley participated in the decision as to which charges would be lodged against Friedrich. The complaint thus states a claim for malicious prosecution against all four officers.

Friedrich has sufficiently stated claims under Counts VIII, IX, and X against Johnson and Utsey. Therefore, their motion to dismiss will be denied as to these claims.

H.

There does not appear to be an issue of law before the court with respect to the demand for punitive damages claimed in Count XI. The defendants do not suggest that such damages are not recoverable, but rather that the demand should not be set out as a separate claim for relief. As the court has been shown no ground upon which the demand should be stricken, the court will deny dismissal, despite its denomination as a numbered count in the complaint.

I.

In summary, the following claims remain after this disposition:

1. Count I asserted by all plaintiffs against all of the defendant officers alleging suppression of free speech.

2. Count III asserted by Friedrich against all of the defendant officers for unreasonable seizure.

3. Count IV asserted by Friedrich against all of the defendant officers alleging malicious prosecution in retaliation for exercise of constitutional rights.

4. Count VI by all plaintiffs asserting municipal liability for the acts of the officers.

5. Count VIII asserted by Friedrich against all of the defendant officers for assault and battery.

6. Count IX asserted by Friedrich against all of the defendant officers for false imprisonment.

7. Count X asserted by Friedrich against all of the defendant officers for malicious prosecution.

8. Count XI asserted by all plaintiffs claiming entitlement to punitive damages.

A separate order will be entered this date dismissing the remaining claims in accordance with this opinion.

**IT IS SO ORDERED**.